**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| LACINDA ADE OJO | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 4:36-cv-08791 |
| | § | JURY |
| YOUNG MEN'S CHRISTIAN | § | |
| ASSOCIATIONOF THE GREATER | § | |
| HOUSTON AREA, | § | |
| Defendant | § | |

---

PLAINTIFF'S ORIGINAL COMPLAINT & JURY DEMAND

---

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiff LaCinda Ade Ojo ("Ade Ojo") sues Defendant 4 ("YMCA") for discrimination and retaliation based on pregnancy and disability in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, the Americans with Disabilities Act, as amended, and the Texas Commission on Human Rights Act.

YMCA employed Ade Ojo for over five years as its Payroll Director and twice recognized her work, naming her "Employee of the Year" and awarding her the President's Award. Then Ade Ojo had a high-risk pregnancy that required weekly ultrasounds, bloodwork, and infusions, and YMCA turned on her. Through its Vice President of Human Resources, Yolanda Wright, YMCA questioned whether Ade Ojo's medical appointments were real and pressured her to take FMLA leave she did not need. It demeaned her in front of colleagues while she was receiving an infusion, and it forced her to send a photograph of herself with an IV in her arm just to be believed. YMCA then came up with performance concerns that had never existed before her pregnancy. Ade Ojo

reported Wright's conduct to YMCA Human Resources, the Texas Workforce Commission Civil Rights Division, and the EEOC. YMCA responded by suspending her over a second job it had known about since before it hired her. When Ade Ojo said the suspension was retaliation for her complaint, Wright told her, "You know what, just don't come back," and YMCA fired her on the spot. After her termination, Ade Ojo suffered a miscarriage.

In support, she shows the following:

## I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff LaCinda Ade Ojo is a female individual who resides in Harris County, Texas.

2. Defendant YMCA of Greater Houston is a nonprofit organization with its principal place of business at 3110 Hayes Road, Houston, Texas 77082. It may be served with process through its registered agent, Stephen C Ives, at 3110 Hayes Road, Suite 300, Houston, Texas 77082.

3. Personal jurisdiction over Defendant is appropriate because at all times relevant to Plaintiff's claims it operated in the state of Texas, and all of the events giving rise to this lawsuit occurred in Harris County in the state of Texas. Further, an exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.

4. Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978; the Americans with Disabilities Act, as amended; and the Texas Commission on Human Rights Act.

5. This Court has jurisdiction to hear the merits of the claims under 28 U.S.C. § 1331 for Plaintiff's claims under federal law, and under 28 U.S.C. § 1367 for her claims under Texas law.

6. Venue is proper in the district and division under 28 U.S.C. § 1391(b).

## II. CONDITIONS PRECEDENT

7. Ade Ojo timely dual-filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission – Civil Rights Division.

8. Ade Ojo files this suit within the appropriate time following her receipt of the Notice of Right to Sue.

9. All conditions precedent for filing suit have been satisfied.

## III. FACTUAL BACKGROUND

### A. Ade Ojo was a model employee and had no performance concerns until her high-risk pregnancy.

10. YMCA hired Ade Ojo in January 2020 as its Payroll Director.

11. Throughout her employment, Ade Ojo performed her job duties diligently and effectively, earning "Employee of the Year" in 2020 and the President's Award in 2023, along with a $2,500 bonus.

12. Prior to her pregnancy, YMCA never documented or communicated any performance concerns regarding Ade Ojo's work, and her job duties and title remained unchanged throughout her employment.

13. In early 2025, Ade Ojo was transferred to report to Yolanda Wright, YMCA's Vice President of Human Resources. At the time of this transfer, Ade Ojo was already pregnant.

14. At age 50, Ade Ojo had a high-risk pregnancy that required regular medical treatment, including weekly ultrasounds, bloodwork, and infusions. Ade Ojo was transparent with Wright about these medical requirements.

15. Rather than supporting Ade Ojo during her high-risk pregnancy, Wright immediately questioned the legitimacy of her medical appointments and treatment needs.

16. Wright repeatedly pressured Ade Ojo to take FMLA leave, despite the fact that Ade Ojo was scheduling her medical appointments during her lunch break and was not missing work.

17. On or about June 24, 2025, Ade Ojo participated in a team meeting via Zoom while receiving a medical infusion related to her pregnancy. During the call, Wright made demeaning remarks in front of colleagues, questioning how Ade Ojo could still be in the waiting room and insinuating she was not actually at a medical appointment. The group in the office laughed at Wright's comments.

18. As a result, Ade Ojo was compelled to send Wright a photograph of herself with the IV attached to her arm simply to be believed.

19. Wright's conduct created a hostile work environment that was a direct stressor on Ade Ojo's high-risk pregnancy, contributing to her need for therapy appointments to address the effects of the hostility on her health.

20. YMCA has no documented performance concerns regarding Ade Ojo prior to her pregnancy and her supervision under Wright.

**B. After Ade Ojo started treatment for her pregnancy-related disabilities, the YMCA claimed she had performance concerns.**

21. After Ade Ojo began treating her pregnancy-related disabilities, YMCA suddenly began alleging performance failures, including claims that she missed deadlines, failed to communicate, and had declining performance. These allegations are contradicted by her prior awards and uniformly positive reviews.

22. During this same period, YMCA directed Ade Ojo to train the newly placed payroll manager, and required her to come into the office an additional day per week beyond what was required of other employees, purportedly to facilitate that training, further singling her out for burdensome requirements not applied to similarly situated colleagues.

23. On August 7, 2025, Wright issued Ade Ojo a written warning by email, framing it as a warning regarding ongoing concerns with her performance. Wright's stated concerns included attendance, missed deadlines, failure to respond to emails, and inadequate staff training. These concerns were exaggerated or fabricated and appeared only after Ade Ojo began experiencing pregnancy-related complications and reporting Wright's conduct.

24. Ade Ojo reported Wright's pregnancy-related hostility and disparate treatment to YMCA's Human Resources, the Texas Workforce Commission Civil Rights Division, and the Equal Employment Opportunity Commission.

25. On August 27, 2025, Wright entered Ade Ojo's office together with Jennifer Lopez from Human Resources. Wright immediately exhibited hostility and informed Ade Ojo she was being suspended for three days based on allegations that she had a second job.

**C. The YMCA was aware of Ade Ojo's second employer for five years before it became "an issue."**

26. In fact, Ade Ojo's second employer, HGS LLC, had been listed on her resume since before her date of hire in January 2020, and YMCA had been aware of this secondary employment for nearly five years without ever raising any concern.

27. In response to the false accusation, Ade Ojo told Wright, "You are doing this to me because I filed a workplace harassment claim against you." Wright replied, "You know what, just

don't come back." YMCA immediately escalated from a three-day suspension to termination following this explicit reference to Ade Ojo's protected activity.

28. After the termination, YMCA continued to call HGS LLC so repeatedly to "verify" Ade Ojo's employment that HGS LLC blocked YMCA's number, directly contradicting Wright's claim that she had already verified the supposed misconduct before suspending Ade Ojo.

29. YMCA's shifting and inconsistent justifications for the termination, its long-standing knowledge of the secondary employment, and the immediate temporal proximity between Ade Ojo's protected activity and her termination constitute compelling evidence of pretext.

30. Following her unlawful termination, and due in significant part to the stress and trauma caused by YMCA's discriminatory and retaliatory conduct, Ade Ojo suffered a miscarriage.

31. The real reason Ade Ojo was terminated was because of her pregnancy, her disabilities exacerbated by her pregnancy, and her protected complaints of pregnancy and disability discrimination and harassment. YMCA's actions violate Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act as amended, and the Texas Commission on Human Rights Act.

## IV. CAUSES OF ACTION

### PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED BY THE PREGNANCY DISCRIMINATION ACT

32. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

33. Defendant's actions in discriminating against Plaintiff were undertaken because of her sex, on the basis of pregnancy, in violation of 42 U.S.C. § 2000e-2(a).

34. Defendant engaged in adverse employment actions against Plaintiff, including creating a hostile work environment, subjecting her to disparate and burdensome requirements, and ultimately terminating her employment.

35. Defendant's conduct reflects unlawful stereotypes about pregnant employees and constitutes sex discrimination based on pregnancy in violation of Title VII, as amended by the Pregnancy Discrimination Act of 1978.

36. As a result of Defendant's unlawful discrimination, Plaintiff has suffered, and continues to suffer, damages, including but not limited to lost wages, both past and future, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

37. Defendant's actions were intentional, malicious, and committed with reckless indifference to Plaintiff's federally protected rights.

38. To redress the injuries sustained by Plaintiff on account of these discriminatory actions, she has retained the undersigned counsel to represent her in this action. She therefore seeks recovery of reasonable attorneys' fees, expert costs, and other costs of suit under 42 U.S.C. § 2000e-5(k).

## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED BY THE PREGNANCY DISCRIMINATION ACT

39. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

40. Plaintiff engaged in protected activity under Title VII and the Pregnancy Discrimination Act by reporting pregnancy-related discrimination and harassment to YMCA Human Resources, the Texas Workforce Commission Civil Rights Division, and the EEOC.

41. Defendant engaged in intentional retaliation against Plaintiff for her participation in protected activity, including but not limited to terminating her employment immediately after she explicitly referenced her protected complaints.

42. A causal connection exists between Plaintiff's protected activity and Defendant's adverse employment actions, evidenced by the immediate temporal proximity between her reporting and her termination, and by Wright's own words at the time of termination.

43. Defendant's conduct violated Title VII of the Civil Rights Act of 1964.

44. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling Plaintiff to compensatory damages.

45. Defendant has engaged in unlawful retaliatory practices with malice and reckless indifference to Plaintiff's statutorily protected rights, entitling Plaintiff to punitive damages.

46. To redress the injuries Plaintiff has sustained as a result of Defendant's unlawful retaliatory practices, Plaintiff has retained the undersigned counsel to represent her and seeks recovery of reasonable attorneys' fees, experts' fees, and costs.

## DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED

47. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

48. Defendant is engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

49. Plaintiff was qualified for her position at all relevant times, as demonstrated by her sustained performance record, multiple awards, and her designation to train the new payroll manager.

50. Plaintiff's pregnancy-related conditions, including the need for weekly ultrasounds, bloodwork, and infusions, constituted disabilities within the meaning of the ADAAA in that they substantially limited one or more major life activities. Defendant was aware of these conditions and limitations.

51. Rather than accommodating Plaintiff or engaging in the interactive process, Defendant questioned the legitimacy of her medical needs, subjected her to a hostile work environment, and ultimately terminated her employment because of her pregnancy-related disabilities.

52. Defendant's actions, including but not limited to its failure to accommodate and its termination of Plaintiff, were undertaken because of her disabilities and constitute violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, et seq., as amended.

53. Because of Defendant's actions, Plaintiff has suffered damages within the jurisdictional limits of this Court.

54. To redress the injuries sustained by Plaintiff on account of these discriminatory actions, she has retained the undersigned counsel to represent her in this action. She therefore seeks recovery of reasonable attorneys' fees, experts' fees, and costs.

RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED

55. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

56. Plaintiff engaged in protected activity under the ADAAA by reporting disability-related discrimination and by opposing Defendant's failure to engage in the interactive process with respect to her pregnancy-related disabilities.

57. Defendant's retaliatory conduct, culminating in Plaintiff's termination immediately following her explicit reference to her protected complaints, constitutes unlawful retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, et seq., as amended.

58. To redress the injuries sustained by Plaintiff on account of these discriminatory actions, she has retained the undersigned counsel to represent her in this action. She therefore seeks recovery of reasonable attorneys' fees, experts' fees, and costs.

PREGNANCY/SEX DISCRIMINATION IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

59. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

60. Defendant's actions in discriminating against Plaintiff based on her pregnancy and related medical conditions constitute violations of the Texas Commission on Human Rights Act.

61. To redress the injuries sustained by Plaintiff on account of these discriminatory actions, she has retained the undersigned counsel to represent her in this action. She therefore seeks recovery of reasonable attorneys' fees, experts' fees, and costs.

DISABILITY DISCRIMINATION IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

62. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

63. Defendant's actions, including but not limited to its failure to accommodate Plaintiff and its termination of her employment, were undertaken because of her disabilities and constitute violations of the Texas Commission on Human Rights Act.

64. To redress the injuries sustained by Plaintiff on account of these discriminatory actions, she has retained the undersigned counsel to represent her in this action. She therefore seeks recovery of reasonable attorneys' fees, experts' fees, and costs.

RETALIATION IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

65. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

66. Defendant's actions, including but not limited to terminating Plaintiff's employment immediately after she engaged in protected activity, constitute violations of the Texas Commission on Human Rights Act.

67. To redress the injuries sustained by Plaintiff on account of these discriminatory actions, she has retained the undersigned counsel to represent her in this action. She therefore seeks recovery of reasonable attorneys' fees, experts' fees, and costs.

## V. JURY DEMAND

68. Plaintiff demands a trial by jury and has tendered the appropriate fee.

## VI. PRAYER

69. WHEREFORE, Plaintiff LaCinda Ade Ojo requests that Defendant YMCA of Greater Houston be cited to appear and answer, and that, after trial by jury, Plaintiff take judgment against Defendant as follows:

a. Judgment against Defendant ordering them to take such reasonable actions as may be necessary to remedy the effects of Defendant's violations of law;
b. Judgment against Defendant for lost wages and benefits, both back pay and front pay;
c. In the alternative to front pay, judgment against Defendant placing Plaintiff in the position of employment she would have enjoyed but for the discrimination and retaliation, if deemed feasible;
d. Judgment against Defendant for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;
e. Injunctive relief as appropriate;
f. Judgment against Defendant for punitive damages to the extent allowed under the law;
g. Pre-judgment interest at the appropriate legal rate on all amounts awarded;
h. Interest after judgment at the appropriate legal rate on all amounts awarded until paid in full;
i. Judgment against Defendant for Plaintiff's reasonable attorneys' and experts' fees;
j. Costs of suit; and
k. Such other and further relief to which Plaintiff may justly be entitled.

Respectfully submitted,

*/s/ Madeline Garza*

Madeline Garza
Texas Bar No. 24144001
Southern Dist. Texas Bar No. 3928697

WILEY WHEELER, P.C.

1651 Richmond Ave
Houston, Texas 77006
Telephone: (214) 528-6500
Facsimile: (214) 528-6511
Mgarza@robwiley.com

ATTORNEYS FOR PLAINTIFF